JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

DEBBIE JANG
State Bar #035157
Asst. Federal Public Defender
Attorney for Defendant
debbie_jang@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

United States of America,

Plaintiff,

vs.

Sidney Allen Gottschalk,

Defendant.

No. CR-22-00458-PHX-DJH

**MOTION TO DISMISS INDICTMENT**

Defendant Not In Custody

Defendant Sidney Allen Gottschalk, through undersigned counsel, pursuant to Federal Rule of Criminal Procedure 12 and LRCrim 12.1, respectfully moves this Court to dismiss the indictment in this case with prejudice, on the ground that the charges violate the Second Amendment to the United States Constitution.

## I. Introduction

On May 10, 2022, the government filed a twelve-count indictment against Mr. Gottschalk. (Doc. 1.) Count 1 alleges that between October 6, 2021, and February 18, 2022, in the District of Arizona, Mr. Gottschalk "willfully engage[d] in the business of dealing in firearms" despite "not being a licensed dealer of firearms," in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D). (Doc. 1 at 1.) Section 922(a)(1)(A) makes it a crime for any person who is not a

"licensed dealer" to "engage in the business of . . . dealing in firearms[.]" Section 923(a) describes the application required to obtain a license, and § 924(a)(1)(D) provides that violations are punishable by fines and up to five years of imprisonment. Counts 2 through 12 charge that on eleven specified dates between October 6, 2021 and February 18, 2022, Mr. Gottschalk executed ATF Form 4473s in connection with the purchase of firearms that falsely identified himself as the "actual buyer" of the firearms, knowing that he was in reality buying the firearms on behalf of another person, in violation of 18 U.S.C. § 922(a)(6) and 924(a)(2). (Doc. 1 at 2-3.) Section 922(a)(6) makes it a crime for a firearm purchaser to knowingly make a false statement respecting a fact material to the lawfulness of the sale. Section 924(a)(2) provides that violations are punishable by fines and up to ten years of imprisonment. The indictment also charges that three specified firearms would be forfeitable upon conviction. (Doc. 1 at 3-4.) Mr. Gottschalk has pleaded not guilty to the charges. (Doc. 8.)

## II. The Court should dismiss the indictment because the charges violate the Second Amendment.

### A. The Count 1 charge of dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A) violates the Second Amendment.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment protects an individual right to keep and bear arms, unconnected with service in a militia. Eight years later, in *Teixeira v. County of Alameda*, 822 F.3d 1047 (9th Cir. 2016), a panel of the Ninth Circuit addressed a challenge to an Alameda County, California ordinance that barred gun retailers from locating within 500 feet of residential areas, schools, day care centers, other

gun dealers, liquor stores, and places where liquor is served. *Id*. at 1050. Assessing the constitutionality of this ordinance required the panel to determine whether the Second Amendment's protection extends to the *selling* of firearms.

The panel held that it does. The panel noted that "[o]ur forefathers recognized that the prohibition of commerce in firearms worked to undermine the right to keep and bear arms." *Id*. at 1054. The panel observed that a colonial Virginia statute guaranteed the "liberty to sell armes and ammunition to any of his majesties loyall subjects inhabiting this colony." *Id*. When the crown sought to embargo the import of weapons and ammunition into the colonies, outrage ensued, with the General Committee of South Carolina warning of a plan to "disarm[] the people of America, in order the more speedily to dragoon and enslave them." *Id*. Thomas Jefferson noted that "[o]ur citizens have always been free to make, vend, and export arms." *Id*. at 1055. The panel observed that this historical understanding of the scope of the right to keep and bear arms was a logical necessity, because "where a right depends on subsidiary activity, it would make little sense if the right did not extend, at least partly, to such activity as well." *Id*. Thus, for example, the right to contraception extends to the selling of contraceptives, and the right to free expression extends to the selling of the materials used to produce newspapers. *Id*. (citing cases). Indeed, the panel noted, the court had already held that the Second Amendment protects the sale of ammunition, *Jackson v. San Francisco*, 746 F.3d 953, 967-68 (9th Cir. 2014)—and "[i]t would be truly bizarre if the Second Amendment did not extend similarly to the sale of firearms." *Teixeira*, 822 F.3d at 1055 n.4.

Having confirmed that "the historical right that the Second Amendment enshrined embraces the purchase and sale of firearms" (*id*. at 1057), the panel

turned to the question of whether the Alameda County ordinance was unconstitutional. The panel acknowledged that in *Heller* the Supreme Court stated that its opinion did not "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, *or laws imposing conditions and qualifications on the commercial sale of arms*." *Id*. at 1056-57 (*quoting Heller*, 554 U.S. at 626-27) (emphasis added). The panel rejected the notion that this language categorically exempted the selling of firearms from Second Amendment scrutiny, noting that if it did, even a "total prohibition on the commercial sale of firearms" would evade Second Amendment review. *Id*. at 1057. Only if the ordinance fell within a "well-defined and narrowly limited category of prohibitions that have been historically unprotected," the panel reasoned, would it fall within *Heller*'s "longstanding prohibitions" language. *Id*. at 1058 (internal quotation marks omitted). Because the government failed to make that historical showing, the panel applied heightened scrutiny to the ordinance, and held that it did not survive such scrutiny. *Id*. at 1058-64.

The *Teixeira* case was reheard by the Ninth Circuit sitting en banc. *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) (en banc). The court acknowledged that the Second Amendment protects "ancillary rights necessary to the realization of the core right to possess a firearm for self-defense." *Id*. at 677. But the court found that this logic extended only to the *purchase* of firearms, and that the plaintiffs could state a Second Amendment claim on this theory only by alleging that the ordinance meaningfully impaired Alameda County residents' ability to acquire firearms. *Id*. at 678-81. The court found that the plaintiffs had failed to make that allegation. *Id*.

The court also addressed, and rejected, the proposition that the Second Amendment protects the right to *sell* firearms. *Id*. at 681-90. The court reasoned that the Second Amendment's reference to the right to "keep" and "bear" arms did not appear on its face to incorporate a right "to sell or trade weapons." *Id*. at 683. The court then examined the Amendment's historical precursors, concluding that they likewise did not appear to articulate a right to sell firearms. *Id*. at 683-90. Because the court found that the Second Amendment does not protect the right to sell firearms, and that the plaintiffs had failed to allege that it impaired the right to purchase firearms, it concluded that the Alameda County ordinance "d[id] not burden conduct falling within the Amendment's scope and [wa]s necessarily allowed by the Amendment." *Id*. at 690 (internal quotation marks omitted).

Three members of the en banc panel wrote separate opinions. Judge Owens concurred, but declined to join the portion of the court's opinion finding that the Second Amendment does not guarantee the right to sell firearms. *Id*. at 690 (Owens, J., concurring). Judge Owens would have found *Heller*'s statement regarding "laws imposing conditions and qualifications on the commercial sale of arms" sufficient to support the court's conclusion. *Id*. (Owens, J., concurring). Judge Tallman concurred in part and dissented in part. *Id*. at 691-94 (Tallman, J., concurring in part and dissenting in part). Judge Tallman believed that the plaintiffs had adequately alleged that the ordinance unduly infringed upon Alameda County residents' ability to vindicate their Second Amendment right to purchase firearms. Judge Bea dissented. *Id*. at 694-99 (Bea, J., dissenting). Judge Bea agreed with the majority's acknowledgement that a prospective gun-seller may seek to vindicate the rights of its prospective customers to purchase guns, but he rejected the majority's conclusion that the seller had to show that the ordinance's burden on

that right was "meaningful" or "substantial" in order to invoke the Second Amendment's protection. *Id*. at 695 (Bea, J., dissenting). Judge Bea also rejected the majority's conclusion that the Second Amendment does not protect the right to sell firearms. *Id*. at 698-99 (Bea, J., dissenting). Judge Bea believed that *Heller*'s description of "longstanding" laws imposing conditions and qualifications on the commercial sale of arms as "presumptively lawful" effectively required the government to show that the ordinance was "the kind of regulation which Americans would have seen as permissible at the time of the adoption of the Second Amendment." *Id*. at 699 (Bea, J., dissenting). Judge Bea concluded that "neither the historical evidence nor the language of *Heller* support[ed] the majority's conclusion that the Second Amendment offers no protection against regulations on the sale of firearms." *Id*. (Bea, J., dissenting).

Mr. Gottschalk acknowledges that the en banc court's holding in *Teixeira* that the selling of firearms is not protected by the Second Amendment appears to preclude this Court from holding that unlawful-dealing charge in Count 1 violates his Second Amendment right. In view of the possibility that a new en banc panel or the Supreme Court may disagree with that holding, however, Mr. Gottschalk hereby preserves his argument that the en banc court's holding is mistaken, and that the original panel opinion, as well as Judge's Bea's dissent from the en banc court's holding, correctly found that the right to sell firearms is conduct protected by the Second Amendment. Assuming that is so, the government would bear the burden of showing that the restriction imposed by § 922(a)(1)(A) is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. In fact, because the "general societal problem[s]" that might result from unlicensed firearms dealing are not the product of "unprecedented societal

concerns" or "dramatic technological changes," but rather would have been present in the founding era as well, the government would have to identify a "distinctly similar" historical regulation addressing those problems in order to vindicate the law. *Id*. at 2131-32. In light of the en banc court's survey of founding-era regulations, which do not appear to have been distinctly (or even remotely) similar to the licensing mandate at issue here (*Teixeira*, 873 F.3d at 684-86), it appears unlikely that the government could carry that burden.

### B. The Counts 2-12 charges of making false statements in connection with the purchase of firearms in violation of 18 U.S.C. § 922(a)(6) violate Mr. Gottschalk's Second Amendment right.

Although, as noted above, the en banc Ninth Circuit in *Teixeira* rejected the conclusion that the Second Amendment protects the right to *sell* firearms, the court confirmed that the Amendment protects the right to *purchase* firearms. The court observed that "the core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." *Teixeira*, 873 F.3d at 677 (*quoting Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)). And the court found "cogent[]" the 1871 Tennessee Supreme Court's observation that "'[t]he right to keep arms, necessarily involves the right to purchase them[.]'" *Id*. at 678 (*quoting Andrews v. State*, 50 Tenn. 165, 178 (Tenn. 1871)). Moreover, it is clear that Mr. Gottschalk—a United States citizen (Pretrial Services Report, May 24, 2022, at 1)—is among "the people" who enjoy the right protected by the Second Amendment, as *Heller* made plain that this phrase encompasses "all members of the political community." *Heller*, 554 U.S. at 580.

It follows that Mr. Gottschalk's conduct underlying Counts 2 through 12—seeking to purchase firearms from dealers in Chandler and Mesa (Doc. 1 at 2)—

was presumptively protected by the Second Amendment. That being so, the government carries the burden of justifying the application of § 922(a)(6) to Mr. Gottschalk "by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129-30. Moreover, because the phenomenon of individuals making false statements in relation to the purchase of firearms does not implicate "unprecedented societal concerns" or "dramatic technological changes," but instead represents a "societal problem that has persisted since the 18th century," the government must identify a "distinctly similar" historical regulation addressing that problem. *Id*. at 2131-32.

Mr. Gottschalk respectfully requests that the Court hold the government to this burden—and if the government fails to carry it, dismiss Count 2 through 12 with prejudice.

## III. Conclusion

Because the charges violate the Second Amendment to the United States Constitution, the Court should dismiss the indictment with prejudice.

Respectfully submitted: February 3, 2023.

JON M. SANDS
Federal Public Defender

*s/Debbie Jang*
DEBBIE JANG
Asst. Federal Public Defender