GARY M. RESTAINO
United States Attorney
District of Arizona

BRETT A. DAY
Assistant U.S. Attorney
Arizona State Bar No. 027236
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Brett.Day@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Sidney Allen Gottschalk,<br>Defendant. | CR-22-00458-PHX-DJH<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT** |

On May 10, 2022, Defendant was charged via indictment for one count of Dealing Firearms without a License (Count 1) and eleven counts of Making a Material False Statement During a Firearm Purchase (Counts 2 – 12). (Doc. 1.) Defendant moves to dismiss the indictment as a violation of his Second Amendment rights to "bear and keep" firearms. (Doc. 19.)

Defendant acknowledges that under current law, the selling of firearms, as alleged in Count 1, is not protected by the Second Amendment. (Doc. 19 at 6.) Defendant further acknowledges that "laws imposing conditions and qualifications on the commercial sale of firearms, as alleged in Counts 2 – 12, is not protected by the Second Amendment under current law. (Doc. 19 at 4.)

However, assuming that the current law is mistaken and will be ultimately

overturned, Defendant contends that the government must now bear the burden of showing the restrictions imposed by the current laws, "is consistent with the Nation's historical tradition of firearm regulation." (Doc. 19 at 6.) At best, Defendant's claims are premature, if not misplaced regarding the government's burden.

## I. Current Law Following the Supreme Court Decision in *Bruen*.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment codifies a pre-existing individual right of "the people" to bear arms. 554 U.S. 570, 595 (2008).

In *Bruen*, the Supreme Court held that the Second Amendment protects the right to carry a handgun outside of the home. *N.Y State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). The *Bruen* Court stated that *Heller* recognized the Second Amendment right of "an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Id.* at 2122. *Bruen* simply extended the right of "ordinary, law-abiding citizens" to have a similar right to carry weapons for self-defense outside of the home. *Id*. at 2122.

To support its holding, the Court put forth a new test in the Second Amendment context: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must *then* justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command'." *Id*. at 2129-30 (emphasis

added).

In short, a court analyzing a Second Amendment challenge post-*Bruen* should proceed in three steps. First, the court should review the defendant's proposed course of conduct. *See Bruen*, 142 S. Ct. at 2134. Second, the court should analyze whether the "plain text" of the Second Amendment covers the defendant's proposed course of conduct. See *id.* Finally, if the plain text includes the course of conduct, the court *then* must decide if the government has shown that the challenged regulation is consistent with our Nation's historical tradition of firearm regulation. *See id*. at 2135.

## II. Defendant's Course of Conduct is Not Covered by the Plain Text of the Second Amendment.

The Ninth Circuit has stated the text of the Second Amendment does not include the right to sell or trade weapons. *See Teixeira v. County of Alameda*, 873 F.3d 670, 683 (9th Cir. 2017). As noted in *Teixeira,* nothing in the specific language of the Second Amendment suggests that sellers fall withing the scope of its protections. *Id*. The operative language of the Second Amendment, "Keep" and "Bear" cannot be meaningfully interpreted or extended to the right to sell firearms. *See id*.

Additionally, statutes may still require a firearms license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements. *Bruen* 142 S.Ct. at 2162 (Kavanaugh, J., concurring). Likewise, a statute requiring an applicant to provide truthful information during the application process would not be in violation of one's Second Amendment rights. See also *McDonald v. City of Chicago, Ill.*, 130 S. Ct.

3020, 3047 (2010) (emphasizing that "longstanding regulatory measures" such as "'laws imposing conditions and qualifications on the commercial sale of arms'" are presumptively constitutional) (quoting *Heller*, 128 S. Ct. 2783)

Here, Defendant is charged with Dealing Firearms without a License (Count 1) and eleven counts of Making a Material False Statement During a Firearm Purchase (Counts 2 – 12). Neither course of conduct is meaningfully related to one's right to "keep" and "bear" arms. Therefore, Defendant's course of conduct of unlicensed dealing and providing materially false information in the acquisition of a firearm is not protected under the plain text of the Second Amendment as established by current case law. As such, it fails the threshold requirement of the *Bruen* test and the statutes are not in violation of the Second Amendment.

**III. Consistency with Our Nation's Historical Tradition of Firearm Regulation is Not Necessary.**

As set forth in *Bruen*, when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must *then* justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. *Bruen, 142 S. Ct. at 2129-30.* However, where the defendant's course of conduct is not protected by the text of the Second Amendment, as is here, the analysis is at an end.

While the Government does not concede that the *Bruen* analysis should be applied to either of the two challenged statutes in Defendant's motion, should the Court consider this Nation's historical tradition of firearms regulation, the motion should still be denied.

The regulatory scheme underlying the statutes is designed to ensure that firearms do not fall into the hands of a prohibited person. As discussed above, the statutes do not run afoul of the Second Amendment's protections. However, even if the Court were inclined to analyze the historical tradition of firearm regulation, there are historical analogues to this regulatory scheme.

"Colonial government substantially controlled the firearms trade." *Teixeira v. Cnty of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017). For example, "a 1652 New York law outlawed illegal trading of guns, gun powder, and lead by private individuals." *Robert J. Spitzer, Gun Law History in the United States and Second Amendment Rights*, 80 Law & Contemp. Probs. 55, 77 (2017). "A 1631 Virginia law required the recording not only of all new arrivals to the colony, but also 'of arms and munitions.'" *Id*. In the early 17th century, Connecticut banned residents from selling firearms outside the colony. *Teixeira*, 873 F.3d at 685. Virginia provided that people were at "liberty to sell arms and ammunition to any of his majesties loyal subjects inhabiting this colony." *Id*. at 685 n.18 (emphasis added). Still other colonies "controlled the conditions of trade" in firearms. *Id*. at 685.

All these laws restrict aspects of the firearms trade. Some restricted the individuals to whom a seller could sell firearms. Although those statutes and restrictions were not identical to the current federal scheme regulating sales of firearms, *Bruen* does not require that they be identical. Instead, *Bruen* made clear that the government need only identify a "*historical* analogue, not a historical twin." 142 S. Ct. at 2133.

## IV. Conclusion

For these reasons, the Court should deny the defendant's Motion to Dismiss Indictment.

Respectfully submitted this 21st day of February, 2023.

GARY M. RESTAINO
United States Attorney

*s/Brett Day*
BRETT A. DAY
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Mark J. Andersen

*s/ Brett Day*
U.S Attorney's Office